UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO: 3:12-CV-859-H

SYLVIA L. BENNETT                                                                               PLAINTIFF

V.

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT                                                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Defendant, Louisville/Jefferson County Metro Government ("Louisville Metro"), has moved for summary judgment on Plaintiff's retaliation claims. As the Court will explain, there are a number of reasons why Plaintiff's complaint cannot go forward.

I.

Plaintiff is a Senior Social Worker employed at the Louisville Metro Community Corrections Center ("CCC"). She began working there in November, 2010. In the fall of 2011, Plaintiff began to have problems with one of her co-workers, Officer Henry Waldridge. Plaintiff believed that Officer Waldridge made belittling comments about her, told her that she did not know how to do her job, wrote negative e-mails about her to supervisors and even made negative comments about her to inmates in the correctional facility. Plaintiff also said that she had overheard Waldridge use racial epithets about her and other Afro-American workers.

Plaintiff first shared her concerns about Waldridge on November 23, 2011, in an e-mail to Mark Bolton, Director of the Department of Corrections. In that e-mail, Plaintiff set forth most of her complaints about Waldridge. Almost immediately, Dwayne Clark, the Department's Chief of Staff, and others met with Plaintiff to discuss her concerns. After an initial meeting, they investigated the incident and decided to move Waldridge to a different floor. Nevertheless,

according to Plaintiff, Waldridge kept reappearing on her floor even after he was reassigned to a different area. On January 30, 2012, Plaintiff sent an e-mail to Clark saying that she felt unsafe and uneasy about Waldridge's presence. Plaintiff also indicated that she was thinking about filing an official complaint with the Equal Opportunity Commission.

In any event, on February 14, 2012, Plaintiff met with Director Bolton concerning her complaints about Waldridge. Bolton expressed concern that Plaintiff felt unsafe and decided that he would transfer her temporarily to a new area pending investigation. The next day Director Bolton issued a letter to Bennett stating:

> "Effective immediately and until further notice, you are assigned to the Main Jail Complex pending investigation of the information you presented to my office on February 14, 2012, regarding your concerns for your personal safety at CCC. Your shift and days off will remain the same. For further instructions on your schedule, please contact Deputy Director Kathy Bingham.
>
> This letter serves as your written notice as required by the Collective Bargaining Agreement, Article 25, Section 7, B #5. The ten (10) days notification is being waived due to a bona fide emergency which will be addressed in the investigation. Rest assured, Sylvia, that the safety of you and all Corrections employees is something I take quite seriously and I will expedite this investigation and keep you abreast of what we find.

Plaintiff remained at the Main Jail Complex for approximately five months until after the investigation and a subsequent labor arbitration was completed. She returned to the CCC on July 16, 2012. During the time at the Main Jail Complex, Plaintiff's salary and benefits remained the same. Nevertheless, she says that she performed no real duties and that she felt embarrassed and humiliated.

II.

To establish a *prima facie* case of Title VII retaliation a plaintiff must prove that (1) she

2

is engaged in activity protected by Title VII; (2) this exercise of protected right was known to defendant; (3) defendant thereafter took adverse action against plaintiff or plaintiff was subject to severe or persuasive retaliatory harassment by a supervisor and (4) there was a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

A.

First, the Court does not believe that Plaintiff has shown an adverse employment action. A significant adverse employment action is usually indicated by hiring, firing, failure to promote, reassignment to significantly different responsibilities, a significant change in benefits, or a significant change in location which is unsatisfactory. *Bowman v. Shawnee State Univ.*, 222 F.3d 456, 461-462 (6th Cir. 2000). Courts have usually found that the transfer of job duties to a different location which does not involve a change in pay or significant job duties is not considered a materially adverse job action. Here, Plaintiff did say that she could not perform her regular duties at her new job location. However, her pay and her job title remain the same. Moreover, the transfer was not permanent. Under these circumstances, the Court concludes that Plaintiff's temporary transfer cannot be considered a significant job action.

B.

Defendant also argues that there is no causal connection between any protected activity and any adverse employment action. Moreover, Defendant argues that its reason for transferring Plaintiff was legitimate and non-discriminatory. These issues are related.

There seems to be no question that Defendant knew of Plaintiff's complaints about Officer Waldridge and his actions. Specifically, on January 30, 2012, Plaintiff expressed

3

specific concerns about her safety. In response to those concerns and as specifically set forth in his memorandum dated February 15, 2012, Director Bolton effected Plaintiff's temporary transfer. Though Plaintiff was complaining more about Waldridge's comments than her own feeling of safety, there can be no doubt that Defendant's actions related directly to Plaintiff's complaints expressed on January 30.

The Court concludes that when Defendant responds to Plaintiff's complaint and takes an action which addresses it, this establishes a legitimate and nondiscriminatory reason for that action. Plaintiff has introduced no evidence suggesting that Defendant's action was taken in retaliation for her complaint as opposed to in response to the concerns of her complaints. For all those reasons, Plaintiff's federal claims fail.

### III.

Finally, Louisville Metro is a consolidated local government established pursuant to KRS Chapter 67C. Political subdivisions of the state and county governments are entitled to sovereign immunity unless the state has given its consent or otherwise waived that immunity. *Yanero v. Davis*, 65 S.W.3d 510, 518 (Ky. 2001). It is well established that Louisville Metro is entitled to sovereign immunity. *Lexington-Fayette Urban County Government v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004). Consequently, because Louisville Metro has not waived sovereign immunity for the state law claims of "outrage" set forth in Plaintiff's complaint, it is entitled to summary judgment on this claim as well.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion for summary judgment is SUSTAINED and Plaintiff's complaint is DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record